Next case on the agenda and the call today is agenda number 6, number 129-402, People of the State of Illinois v. Emmanuel Wells. Counsel for the opponent, are you prepared to proceed? May it please the court. Counsel. My name is Gregory Peterson. I work for the office of the State Appellate Defender and I represent Emmanuel Wells. Defendants in Illinois have a mandatory statutory right to receive sentence credit for every single day that they spend in jail prior to their conviction. They have a mandatory statutory right on exactly the same terms for every single day that they spend in home detention. That right remains with defendants unless and until they waive it. And waiver in Illinois, as in many other states, is the intentional relinquishment of a known right. Now, what we have here on this record is silence as to the fact that Mr. Wells was on home detention. There's no indication in the plea colloquy, in the written plea agreement, that the parties remembered that he was on home detention at any point. The fact that there's no indication that they knew that they remembered at all, in addition to all of the reasons on this record that it makes sense why they wouldn't be thinking about that, shows that he did not waive this by his plea. The state would have you think that we're attacking Mr. Wells' sentence. We're not. He received the minimum sentence allowable by law. I'm not asking for that to go lower. I can't. I'm asking for this court to recognize the time that Mr. Wells had already served. He had spent those months on home detention with the GPS monitoring, with a curfew. And as that curfew was relaxed, it was only relaxed because he was doing so well under pretrial supervision. And as this was relaxed and relaxed and eventually removed entirely, he's out on his own recognizance for several months before his plea. During that period that he was out on his own recognizance, the legislature clarified the statute about home detention. Now, the prior version of the statute did allow for people in Mr. Wells' position to be given credit, but that wasn't as clear. And as a result, there was a whole line of cases implying that he wouldn't receive the credit. This is Ramos. This is Donahue. These are the cases that I discussed very briefly in my opening briefing for this court, but that were heavily briefed below. Those cases have been rendered inapplicable by the statutory amendment. It is now 100 percent clear that Mr. Wells has this mandatory right to the time. Counsel, this was a fully negotiated plea agreement, right? Yes. So Mr. Wells and the State knew what his situation was prior to the time that they negotiated this plea agreement, right? A less definite answer on that one, Your Honor. Also. They're presumed to know, but the record is completely devoid of any mention at the plea hearing. And given that we're talking about a period of almost seven months here, I think it's logical to assume that if this was bargained for, if this was a term of the deal, we would see a single shred of evidence of that in the record, and we don't. Counsel, when a fully negotiated plea is presented to the court, don't they talk about what the agreement is, not what the agreement is not? To some extent, Your Honor, but we do see sometimes they discuss what it's not. And this is something that could be part of a fully negotiated plea agreement? The fact that he would not be receiving credit? A waiver could be, Your Honor, yes. I don't think that the time he got for the time he spent in jail was a term of this agreement. I think we see that from the plea colloquy when the court is walking through the terms of the deal. You would serve this, you would serve that, there would be a street value fine. And then the court says, you have credit for 54 days at this point in time. If it's a negotiated term of the agreement, why is the court leaving it open to change? How did it leave it open to change? At this point in time. So it's an accounting, it's a notation of the fact that he spent those 54 days in jail. And to see what a waiver would look like in this process, because I think a waiver would have been rather easy for the state to secure. They simply had to do so. We have this in Williams. Mr. Williams spent two days in jail prior to his stipulated bench trial. And then at his sentencing, the prosecutor, Mr. Williams' counsel, and the court all said, and that would be no credit for previous time in custody. Those two days are, we're saying, and this is with none. And everyone agrees, that's a waiver. So, counsel, when did your client become aware that his, that the home detention time wasn't counted, wasn't included in the plea agreement? When did he become aware of that? Essentially after he left jail and went to prison, Your Honor. Because the county jails don't award the credit, it's the DOC. But presumably he heard what he had agreed to. The judge talked about that in court. So, he wasn't aware of it at that time? That's correct. Why not? For one thing, Your Honor, when Mr. Wells actually had the GPS monitor on, the law was still relatively unclear on that. It's June 29th. That's not what I'm asking. He was aware at a specific time, in a specific point in time, which is when he was in court and the judge is reciting what the plea agreement says and what he's agreed to. And he knew what was in that plea agreement at that time, did he not? Yes. And what you're contesting now, that the home monitoring time wasn't in that plea agreement. So, did he speak up then? No, Your Honor. Why not? I think the natural assumption is that he thought that there wasn't a waiver in the plea agreement either. I don't understand. It's seven months of credit, Your Honor, that he had already served. Our position is that that credit was his before the plea and it remained his after the plea. But it wasn't in the written agreement, right? That's correct. And he knew that. So, I don't understand what you're saying, that although it wasn't in the written agreement, he thought he had agreed to it? Is that what you're saying? No, Your Honor. I'm saying that although it wasn't in the written agreement, he thought that the written agreement didn't touch his right. So, what does that mean? Didn't touch his right. What does that mean, counsel? It means that he has the absolute right under the statute to ask for the credit that he had already earned at any point in time. Well, under that scenario, why would the 54 days be mentioned? I think that's a natural accounting. It's mentioned. I think if it had not been mentioned at all, he could have asked for it in the exact same manner he did. I don't think this is a case where the 54 was a specifically negotiated number. You see that it matches what's on the jail's timesheet. You see that the trial court says you have this credit at this point in time. It's there, but it doesn't exclude the other. And we've seen this. So, you're saying the plea agreement... Sorry. With a fully negotiated plea, that means that all the terms are resolved and there's a full agreement. Isn't it possible that if he were to receive this credit for the time that you're seeking now, perhaps the state wouldn't have agreed to the minimum sentence? Isn't this an attempt to change the agreement? No, Your Honor. It's an attempt to limit the agreement to what the agreement was and nothing more. To what the agreement was, but you say the agreement was not that he didn't receive this credit? Could you repeat the question, Your Honor? You said this is an attempt to enforce what the agreement was. Yes. So, you're saying that it was part of the agreement that he was going to receive credit for this 166 additional days. Your Honor, I do believe it's 208 additional days, but I'm saying that it was... I'm thinking about what he actually filed. Ah, yes. His initial filing is actually wrong in two different ways, Your Honor. But answer my question. Yes. I'm saying that the credit was not part of the agreement, neither was a waiver of the credit. And given that it's a mandatory statutory right, he remains able to ask for that credit at any time. And we see this, by the way, in the decision in Malone. Counsel, didn't you bring this proceeding pursuant to section, or didn't he file his motion pursuant to Rule 472? I think so, Your Honor. And the purpose of that rule is to correct errors in sentencing, correct? To correct sentence credit, Your Honor, and I do think there's a distinction. Well, the title of this correction of errors in sentencing, that's what the, how the rule is entitled. I also note that in the judgment order, it specifically provides that the court finds that the defendant is entitled to receive credit for time actually served. And then they have 54 written in. But that was not correct, was it? It says time he was entitled to. He was actually entitled to more time. That's your argument, correct? To some extent, Your Honor. I think there is an element of mutual mistake here. I think we have no evidence in this record that this was a negotiated for waiver, the way we see in Williams, for instance, that they talked themselves down in that case from 2 to 0. We have, this is a large amount of credit. This is a significant amount of restrictions that he had already complied with for almost 7 months. To find a waiver of that by silence would be unexpected. We would expect to see this somewhere in the colloquy at some point. The plea agreement did include an agreement that the state would dismiss charges, correct? Yes. So there certainly was some kind of benefit of the bargain going on there, right? Absolutely, Your Honor. And I'd like to stress that we are not contesting any of the terms of the plea agreement. But you're saying it's silent. Because it's silent, we're to read something into it. Because it's silent, you're not to read a waiver into it. And that's the difference here. I think the state and I crucially are differing on what the default rule is here, if there's no mention of the credit. I say if there's no mention of the credit, then whatever rights he had before the plea, he has after the plea. And the state says every single right he has, even ones unrelated to the material terms of the deal, need to be mentioned. How do we resolve these kind of fact questions that you're talking about? He didn't understand. This is what he was told. This is what the judge said. This is what he signed. But he didn't really understand it. He really thought he was getting 711's credit, even though that's not written anywhere. How do we resolve that? Is that the purpose? You know, let's recall that Rule 472 is rather new. You know, there's ideas about benefit of the bargain, you know, that you should be held to what was agreed to when the plea was entered. That 472 is the purpose of that is not to undo pleas. I mean, there's no motion to withdraw the plea here. It's merely to make corrections. So you're seeing a lot of fact questions here about what he knew and what he didn't know. How does the court do that? I think we have a clear record here, Your Honor, of no mention of it whatsoever. So, I mean, and one could say there was a deal. Some of the charges were dismissed, and there was no mention about the time being considered served or the credit for time. And that was what was put on the record. How do we go behind the words? And what process do we go behind those words? I don't think we need to, Your Honor. If the state had wanted to get onto the record this waiver of the credit that he's entitled to, they would simply need to add the word only. They would simply just say, with no credit for home detention. And honestly, I think I would have a much tougher case here if the time he'd spent on home detention had been so much as mentioned. We have in Malone a similar situation. Mr. Malone had almost two years of credit that were mentioned at the plea polyphy about the time he spent in jail, worked into that. And the third district still said, well, you haven't mentioned any of the programming completed in jail. There's no indication here that you knowingly relinquished the right you have. So the right remains the exact same way it was before the deal. It's not part of the deal. It's just the crux of the deal. And so he was represented by counsel. Your client was represented by counsel. Yes. So was the counsel ineffective for not putting the words only into the plea deal? Or what happened there? I think counsel was effective because I don't think the deal waived the time. If this deal waived the time, essentially, if you rule against Mr. Wells in this case and then a future lawyer does exactly what Mr. Wells' lawyer did, that would be ineffective. But here, because I'm saying no waiver, I don't think that was ineffective. I'd also like, Your Honor, you mentioned the fact that Rule 472 is particularly new. So, to some extent, is Castleberry. And the two are related. And prior to Castleberry, these kinds of issues were unwaiveable. So 472 is saying this is something that can be cleared up and handled at the trial court level. It doesn't need to be a full appeal. It doesn't, as the State contends, need to be a post-conviction petition. Shifting this to a post-conviction petition would require incarcerated people to use their first post-conviction petition on a smaller issue or wait to bring it up potentially until it's moot. It would be a slower process. 472 is specifically targeted to these smaller fixes. And here, there's an error in the calculation of Mr. Wells' pre-sentence custody credit. And by the plain text of 472A3, it is cognizable there. The trial court retained the jurisdiction to fix this mistake. The trial court chose not to. And we've appealed it from there. But the crux of the argument here is that his mandatory right to the credit is his until he waives it. And so the default rule for this plea agreement, yes, the plea agreement is silent as to the home detention credit. Yes, the plea agreement is silent as to the waiver of the home detention credit. And just like all of his other rights, this remains his. So I'd also like to briefly touch on a couple of smaller issues. The state is conceding that if the plea is ignored, the first chunk of time that Mr. Wells spent on home detention would be credit earning. But they've expressed some doubt as to the remainder of it. The statute on home detention says that home detention for the purposes of credits includes restrictions such as 12-hour curfews and GPS monitoring. I think that should be readied as disjunctive. Mr. Wells, when he had the 11-hour curfew, had the 11-hour curfew and an ankle bracelet. He had a probation officer checking up on him. He was still under home detention, and the whole portion of time should be earned. I'd also like to briefly elaborate on the remedy here, should this court rule in Mr. Wells' favor. In my briefs, I simply said award 208 days of credit. This court does have the power to award that credit against Mr. Wells' prison sentence and essentially make him start his MSR term early. That does seem like it would have him serving part of his MSR in prison, but this happens all the time. When people are violated at the door, they serve their MSR from prison. So our front-line request here is that you essentially backdate his outdate and give him the 208 days of credit against that. Our second-choice remedy is the Montalvo remedy, where you award him the credit, and that only actually matters should he re-offend, which from a practical perspective is incredibly unlikely. But this is a record that does not mention the home detention in any way at the plea hearing. And it's seven months that he spent only leaving his house when he was specifically authorized to. We even see this from the one time that he butted up against the conditions of the supervision. He went to a gas station across the street three minutes after his curfew. His officer called him and said, what are you doing? He said, I'm sorry, and he went home. This is restrictive. This is credit-earning time, and he did that time already. So we're asking you to not lower his sentence, but recognize the time towards that sentence that he had already served, and not to find a waiver of seven months of time by silence. If there are no further questions. Thank you, counsel. Counsel for the oblate. Good morning. May it please the court. I am Assistant Attorney General Jalen Jaska, and I represent the people of the state of Illinois. The defendant knowingly and voluntarily entered into a fully negotiated guilty plea where he agreed to 54 days of pre-sentencing custody credit. And thus, with this plea, he has waived any other additional pre-sentencing custody credit. That he might have been entitled to. Defendant now attempts to sidestep this waiver, and seeks an additional 208 days of pre-sentencing credit that was not included in this agreement. This is a unilateral move that this court has condemned repeatedly in its case precedent, as it would lead our plea bargaining system into a heads-I-win, tails-you-lose gamble. Thus, whether the defendant had filed a motion for order nunc pro tump, or a Rule 472 motion, his argument fails. Now, to begin with, this appeal rests entirely on a motion for order nunc pro tump. And as the defendant himself concedes, this is the improper vehicle for this claim. Therefore, the circuit court and the appellate court correctly deny this motion, and this court can affirm on this basis alone. But furthermore, the defendant waived any other credit when he explicitly agreed to 54 days of pre-sentencing credit, and has fully negotiated guilty plea. As Your Honor correctly stated, fully negotiated guilty pleas, they state into the record what the agreement is, what it is not. Counsel? Yes. What about the statement that says 54 days credit at this point in time? What does that mean? Your Honor, the judge did say that. However, what has not been mentioned yet is there is also a written and signed plea agreement by the defendant, which the judge was looking at and reading when he was once again going through the terms. So the record is clear in this case that the defendant agreed both in the signed plea agreement as well as verbally through the plea hearing specifically to 54 days of credit. Furthermore, even if there was a potential error, a voluntary guilty plea, it is well established, waives any non-jurisdictional error, including constitutional ones. And this comes from the case People v. Jones, as well as similarly in People v. Sopanavong, where this court found that defendant's guilty plea had waived his claim regarding the court's error in not ordering a PSI report, which was a mandatory requirement. As the defendant in that case, just as in this case, voluntarily and knowingly pled guilty, they have waived these claims now. And defendant cannot bypass this waiver through a non-proton motion or through a Rule 472 motion. Now, Rule 472 is relatively new, but in People v. Fukamakavika, which this court most recently decided, this court has stated that the purpose of Rule 472 is to correct routine or clerical errors. Now, in our case, the defendant cites to specifically in Rule 472 that a circuit court can correct any error in the calculation of pre-sentencing custody credit. Now, here there was no error in the calculation. The defendant explicitly agreed to 54 days, and therefore Rule 472 does not apply. And moving on, as defendant entered into a fully negotiated guilty plea, pursuant to Rule 604D, as well as this court's well-established case precedent, as well as this court's most recent decision, People v. Angela Wells, in order to challenge his sentence, what this defendant must have done first is move to withdraw his guilty plea. And while the defendant was read these appellate rights, that in order to challenge an aspect of his sentence, he must first move to withdraw, he has never moved to do so. Indeed, he seeks instead to leave the rest of his agreement completely undisturbed, to stop the state and tie their hands to the original agreement that they entered, and instead seek an additional benefit to his bargain of 208 days, which, as defendant even states, is a substantial amount of time. Now, in People v. Evans, this court explained how in fully negotiated guilty pleas, a defendant's guilty plea and sentence go hand in hand. So you cannot attack one without first moving in to restore both parties back to that status quo. Now, this is, of course, designed to protect both parties that entered into this plea bargain, and it would go against fundamental fairness to now unilaterally grant this defendant an additional 208 days while forcing the state to stick to their end of the original agreement. And importantly, it would also jeopardize our entire plea bargaining system by encouraging defendants to seek the best bargain possible, and then at any time, they could come back and attack that plea to potentially get additional benefits in this heads-I-win, tails-I-lose gamble. This outcome is repeatedly condemned by this court, and this is also the outcome that defendant's proposed new rule that he cites would usher in. Now, defendant's proposed new rule is in direct contradiction to People v. Evans, to all case law regarding fully negotiated guilty pleas, and the defendant cites to cases Malone and Ford for his basis. Now, the courts in Malone and Ford were wrong. They completely ignored People v. Evans. They completely ignored the emphasis that we put on fully negotiated guilty pleas and the requirement to withdraw that guilty plea to restore both parties to the status quo. And therefore, there are no further questions. Okay, in conclusion, we ask that this court affirm the lower court's decision. Thank you. Thank you very much, Counsel. Counsel in rebuttal. Your Honors, I'll start on rebuttal just briefly with 472. There's already been the question of whether this was a 472 motion or a motion for non-protocol. For one thing, we have an incarcerated pro se defendant filing. It's the substance, not the capture of the determinants. But more importantly, the text of 472 says that the circuit court retains jurisdiction to handle these errors, not that upon a certain motion the circuit court may do this. It's my position that however this matter was brought to the circuit court's attention, the circuit court was authorized by 472 to make the ruling, and the appellate procedure followed from 472B and 472C. If a friend of Mr. Wells' is called the court clerk and the court clerk tells the judge about it, the judge is authorized under 472. Jurisdiction remains. We know 472 arose in a time where there were many, many, many, many cases where folks from your office would stand here and the argument would be how the calculation took place. There was one case I recall, I can't come up with a name, but one case where the judge said, okay, everybody, I've done the math, I think it's 278 days. Does everybody agree? And they all said yes. And sometime later, the defendant came back and said, oops, the numbers are wrong. It really should have been 371. I mean, it was really focused at the time at this idea of miscalculation and not what you're raising, that the court looked through somehow a plea negotiation. The cases that arose under that rule don't seem to fit exactly what you're talking about here. Your Honor, I think to some extent there's two questions in them. I'd start with the calculation. The state's citing Fukamakibika. Fukamakibika is 472A4. This is 472A3. It is a different provision and the language matters because 472A4 says clerical errors. 472A3 says errors, errors in the calculation of credit. And that's not limited to mathematical errors. It's not limited to clerical errors. We are saying that the way they calculated his pre-sentence custody credit was incorrect. So this is by the language of 472 cognizable. But to the extent that my office was arguing these smaller issues, while we were doing that, all of those issues were explicitly unwaivable. I believe it's Woodard that's the decision that said that most recently. But these were unwaivable issues. And 472 doesn't include a carve-out for negotiated pleas. 604, as far as I can tell from my review, hasn't changed in relevant part in that time. The plea aspect of this simply does not touch matters that were not mentioned at the plea sentence. If DCFS comes in and tries to take a defendant's children away from them, whether or not that was mentioned in the plea would be unrelated. You have custody of your kids, you keep custody of your kids. Unless some other proceeding is coming. Your right disappears in another way. We have a mandatory statutory right here. And it remains with his. But I would like to close on the state's concern that our proposed rule here, which is a logical synthesis of what the appellate court has been doing, with the exception of the case below, would blow up the entire system of plea bargaining in Illinois. I wouldn't be here before you if they had mentioned home detention during the plea hearing. I wouldn't be here before you if they had said you will receive only 54 days. Your plea is for six years, and I understand that you all have agreed that it's just going to be 54 days. I wouldn't be here before you. But what we have is no mention whatsoever of a right. And it's a right. So we need knowing relinquishment. We need intentional relinquishment of a known right. And here we have not that. So I'm not asking you to honor one part of this deal and blow up the rest. I'm saying honor the entire deal, including the bit where it doesn't include a waiver. Could the state reinstate the charges that were dismissed? No. Why? They were dismissed as part of the plea deal, as an explicit term of the deal, as a bargained-for term of the deal. Here we have no evidence whatsoever that it was bargained for. And the rule I'm proposing, I'd like to specifically point to Ford as an example where there is that record ambiguity, because this is a concern that Your Honor has referenced. How do we know on these records? Well, for one thing, the rule I'm proposing is just as well suited for circuit courts to apply as it is for reviewing courts. So the circuit court would know, okay, let's get the transcript, let's look through it, let's make the ruling. But in Ford, it was pre-sentence custody on a now-dismissed charge. And the defendant was told at the plea hearing that he didn't have a right to that time by the judge. So what the appellate court said is, given that the judge was telling him he didn't have a right to that in the first place, we're not sure if he waived it. He might have, but we're not sure, because he did waive it, but he did it based on bad advice from the judge that we see. Should we amend our rules about admonishments? You know, I'm thinking about the trial judge. The trial judge is presented with, in writing, this is what we agreed to. And you're saying that's not enough. That doesn't tell us, we don't know what other things were out there. Right? That's basically your argument. To some extent, yes. Okay. So what should the trial judge, what rule should come out of this in terms of admonitions? Does the trial judge have to say, well, the trial judge did say, I assume it's voluntary, have any other promises been made to you? The trial judge did say all those things. Right. So what should the trial judge have done in this situation to admonish the defendant so that it's clear from the record what he's not agreeing to? If you rule for Mr. Wells, nothing needs to change. If you rule for the state, 402 needs this. 402 would need to say. Wait, wait, wait. If you rule for Mr. Wells and we say that the record is unclear whether or not he waived this amount of time, right? I would disagree on that. At the moment in the hearing, during the plea hearing, what should the trial judge have done to make sure that the record is clear whether there's a waiver or not? Your Honor, I do think this record is clear that there is no waiver. So it's a very active case. Okay. The judge did say, have any other promises been made to you? Yes. All right. And so what else should the judge have said? Is there anything else that you think you should have, that credit you should have, but it's not included here? Or what admonition should a trial court give in this scenario you're proposing? In the scenario where you rule for the state, the trial court going forward would need to say, and there's no other sentence credit out there, right? In the scenario where you rule for Mr. Wells, a plea agreement that doesn't mention this waiver simply does not have this waiver. And it gets fixed later. And it gets fixed later, right? Right. And it gets fixed in exactly. Better practice is to have everything on the record right in the beginning. Yes. So we don't have a lot of appeals. We're hearing the Supreme Court talking about so many days, right? Better to have it done in the trial court. So you're suggesting somehow that it's the obligation of the trial court, and maybe we should have met our rules to include this, to say, are you waiving anything? I just ask you if this is what you've agreed to, if any other promises have been made to you. Is there anything else, any other agreement? Well, he did say that. Are there any other agreements? I mean, how should the trial court address this waiver idea? Or can't we just have to wait and let it follow up later? Your Honor, to some extent, I think this question reveals how much more easily my rule can be implemented than the state's. Because 472 provides for these to be fixed in the situations where they have slipped through the cracks. So 472 has it. So there's no way for a trial court to make sure, ethically hearing, that everything is nailed down and correct.  There's no way to do that. I don't think there's a way for the trial court's admonitions to be so perfect and so comprehensive that there would be no need for 472. But given that we have 472, allowing 472 to mean what it says would not require any changes to 402 and 604. You've entered a deal with the state about mischarges and about the term of years in your sentence. You have not entered a deal with the state, and I would say that about the 208 and about the 54. I think the 54 was mentioned, but I do not think it was an explicit agreement. But the fact, I see that my time has expired. So unless there are further questions, thank you. Thank you both. This is case agenda number 6, number 129, 402, People of the State of Illinois v. Manuel Wells. Thank you both sides for your spirited arguments, and this case will be taken under advisory.